

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-24-00351-CV

JOSEPH HANKINS AND THERESA HANKINS, APPELLANTS

V.

MARK C. BURNETT AND B.J. BURNETT, APPELLEES

On Appeal from the 27th District Court
Lampasas County, Texas
Trial Court No. 22589, Honorable John Gauntt, Presiding

April 28, 2025

MEMORANDUM OPINION[1]

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Covid and its pandemic allegedly rendered it impossible for Mark and B.J. Burnett (Burnett) to fulfill their contract with Joseph and Theresa Hankins (Hankins). The trial court agreed. We reverse.

---

[1] Because this matter was transferred from the Third Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

*Background*

The contract involved the completion and conveyance of a home in Lometa, Texas, by Burnett to Hankins. The home in question was to be identical to that Burnett constructed next door. Burnett had begun building the home when the parties contracted, in November 2021, for its conveyance. Documents were signed and deposits made. Additionally, the parties selected March 15, 2022, as the closing, completion, and conveyance date.

During the interim, various material costs rose, allegedly due to the pandemic. That delayed the acquisition of those materials and impeded Burnett's ability to meet the March 15 deadline, or so indicated Mark Burnett. In response, Burnett, through their respective realtors, sought more money from Hankins. Though the contract price was $194,000, the increased amount ranged from an additional $6,000 to $20,000, depending on the witness testifying. Irrespective of the amount, the parties extended the closing date to April 29, 2022.

April 29 came and went. The Hankins appeared at the title company and signed the requisite closing papers. Burnett did not. Burnett viewed his appearance as a futile act since the house had yet to be finished. Instead, Burnett moved into the abode. That resulted in the Hankins' suing for breach of contract, damages, and specific performance.

The court convened a bench trial, whereat Hankins appeared with counsel. Burnett appeared pro se. At its conclusion, the trial court entered judgment awarding Hankins $2,500 as discovery sanctions against Burnett but denying other recovery. It also executed findings of fact and conclusions of law revealing the basis for its decision. Among other things, the trial court found 1) "Defendants failed to complete the

2

construction because the cost of materials more than doubled during the construction and shipments were delayed"; 2) "[t]he issu[es] of impossibility of performance, and the performance of conditions precedent, were tried by consent"; 3) "[t]he contract was vague, had no plans and specifications, and was unenforceable"; and 4) "[t]he unenforceable contract was also not completed because of intervening market conditions brought about by Covid, which prevented performance of the contract."

### *Impossibility of Performance*

The Hankins initially contend that the trial court erred in relieving Burnett from performing due to impossibility. Allegedly, the defense was neither affirmatively pleaded by Burnett, tried by consent, nor proven. We sustain the issues.

Contending that a provision in a contract is void, unenforceable, or unconscionable is a matter in the nature of avoidance which must be affirmatively pleaded. *Upshaw v. Lacado, LLC*, 650 S.W.3d 61, 79 (Tex. App.—Fort Worth 2021, pet. denied). Failing to plead such an affirmative defense results in its waiver. *Id.* Defenses of this ilk include the unenforceability of a contract due to vagueness, *id.*, and impossibility of performance. *Grayson v. Grayson Armature Large Motor Div., Inc.*, No. 14-09-00748-CV, 2010 Tex. App. LEXIS 4465, at *12 (Tex. App.—Houston [14th Dist.] June 15, 2010, pet. denied) (mem. op.).

Allegedly, Burnett failed to plead impossibility. We disagree, given our obligation to liberally construe pleadings of a pro se litigant. *Delgado v. Combs*, No. 07-11-00273-CV, 2012 Tex. App. LEXIS 8610, at *5 (Tex. App.—Amarillo Oct. 15, 2012, no pet.) (mem. op.) (obligating the court to liberally construe pro se pleadings). We arrive at this by reviewing the document utilized by Burnett to join issue.

3

Neither Burnett filed a formal answer but rather a signed letter dated May 30, 2022. The document included their address and the proceeding's cause number. Within it, one finds the statement: "I want to deeply apologize to Mr. & Mrs. Hankins, I am not an extortionist. The windows took over 7 months to receive, and in that time every building product doubled, in some cases tripled." Mark Burnett's testimony at trial followed that theme, i.e., costs rose thereby impeding performance.

We treat the May 30 letter as an answer. *See Cox v. Nat'l Collegiate Student Loan Trust 2006-2*, No. 07-14-00253-CV, 2014 Tex. App. LEXIS 12730, at *2-3 (Tex. App.—Amarillo Nov. 24, 2014, no pet.) (mem. op.) (stating that "[a]n answer does not necessarily have to follow a standard form, and a letter that is signed with the name of the parties, the cause number, and an address constitutes an answer which prevents the taking of a default judgment"). So too do we conclude it provided fair notice of the contention that Burnett's performance was rendered impossible due to higher costs and delays. Our finding the defense adequately pleaded under the circumstances before us does not mean Burnett proved it, though. The Hankins aver that they did not. So, we now address that matter.

In Texas, impossibility consists of impossibility of performance, commercial impracticability, and frustration of purpose. *Imperial Charters, LLC v. Redwood Fire & Cas. Ins. Co.*, No. 02-24-00237-CV, 2025 Tex. App. LEXIS 2283, at *8-9 (Tex. App.—Fort Worth Apr. 3, 2025, no pet.) (mem. op.) (quoting *Key Energy Servs., Inc. v. Eustace*, 290 S.W.3d 332 (Tex. App.—Eastland 2009, no pet.)). The trial court at bar found "impossibility of performance," given its finding that the parties allegedly tried it by consent.

4

Impossibility of performance may excuse contractual performance when an event occurs, and the contract was made on the basic assumption that the event would not occur. *Id.* Or as said by our sister court in Austin, "'[w]here, after a contract is made, a party's performance is made impractical without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.'" *Hollis v. Gallagher*, No. 03-11-00278-CV, 2012 Tex. App. LEXIS 7547, at *12-13 (Tex. App.—Austin Aug. 28, 2012, no pet.) (mem. op.) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981)). Many factors may excuse performance. *Id.* (quoting *Centex Corp. v. Dalton*, 840 S.W.2d 952, 955 (Tex. 1992)). Yet, "a contract [being] more burdensome to perform than initially anticipated does not . . . ." *Imperial Charters*, 2025 Tex. App. LEXIS 2283, at *11; *EM Bldg. Contrs. Servs., LLC v. Byrd Bldg. Servs., LLC*, No. 05-19-00153-CV, 2020 Tex. App. LEXIS 6342, at *35-36 (Tex. App.—Dallas Aug.11, 2020, no pet.) (mem. op.). "[M]ere market shifts or financial inability do not usually effect discharge" because they are not a type of basic assumption alluded to in *Hollis* and on which both parties made the contract. *See* RESTATEMENT (SECOND) CONTRACTS § 261 comment b (stating that "mere market shifts or financial inability do not usually effect discharge" because such are not assumptions on which both parties made the contract).

Here, Burnett complained of Covid and the increased costs of material and delays the disease and accompanying pandemic caused. He left the trial court, and us, to speculate about the particular materials affected, though. Nor did he cite examples underlying his rather conclusory statements. Instead, the sum and substance of his

testimony about costs and delays consisted of statements like 1) "I think you guys know that there was a global pandemic going on"; 2) "[t]here was a giant supply chain problem, and the prices of materials went up about 35 percent, if not 60, 70 percent in some cases"; 3) "[so] we tried everything that we possibly could try"; and 4) "the house cost me about $210,000 to build." Yet, he said at trial that if the Hankins "put in another 6,000 bucks" he would have provided them the house.[2] Construing this evidence in a light most favorable to the judgment, *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005) (so requiring when assessing if legally sufficient evidence supports the verdict), it does not evince impossibility. Rather, it describes no more than a contract merely becoming more financially burdensome to perform than originally anticipated due to market shifts and changes possibly caused by Covid. Again, Burnett acknowledged his ability to finish and deliver the house if the buyers simply agreed to pay $6,000 more. That is not impossibility under the Restatement of Contracts, *E.M. Bldg. Contractors*, and *Imperial Charters*. And, the trial court erred in finding otherwise.

### Contract Unenforceable

Next, the Hankins argue that the trial court erred in holding that the contract was unenforceable because it was vague. We sustain the issue.

That a contract is void, unenforceable, or unconscionable is a matter in the nature of avoidance and must be affirmatively pleaded. *Upshaw*, 650 S.W.3d at 79 (involving and rejecting an allegation the agreement was unenforceable because the obligations

---

[2] Burnett continued that argument within his pro se appellate brief. There, we find him stating: "Appellees were not renegotiating, appellees were asking for time and $6,000.00." This too manifests that completion remained feasible, so long as Hankins paid slightly more.

6

"were vague and indefinite"). If a party fails to so plead such affirmative defenses, they are waived.

Burnett did not plead that the contract itself was unenforceable due to vagueness or any other reason. Nor can anything in his letter answering the complaint be reasonably interpreted as proffering such a defense.[3] Thus, the enforceability of the contract, or lack thereof, was not a ground upon which judgment favoring Burnett could be entered, and the trial court erred in holding otherwise.

### *Conditions Precedent*

The Hankins next contend that the "evidence conclusively establishes that Appellants satisfied all conditions precedent under the contract." To reiterate, the trial court found that "the performance of conditions precedent" were tried by consent, implicitly intimating that some condition was not performed. We sustain the issue.

Generally, when a claimant avers in its petition that all conditions precedent to recovery occurred or were performed, then it need only prove those specifically denied by the opposition. *Stevens v. Avent*, No. 07-20-00265-CV, 2022 Tex. App. LEXIS 2069, at \*3 (Tex. App.—Amarillo Mar. 15, 2022, no pet.) (mem. op.). Here, Hankins alleged in the live pleading that all conditions precedent to "the performance of Mark C. Burnett and BJ Burnett under the Contract have been met." Neither Burnett specifically denied that allegation. Thus, the Hankins had no obligation to prove they performed conditions precedent to Burnett's liability.

---

[3] The trial court did not find that the contract's purported vagueness and unenforceability was tried by consent. So, we need not address that topic.

7

Moreover, the only reference to the performance of conditions precedent at trial came from the trial court. It asked Hankins' counsel: "[i]s it your position that all conditions preceding were performed?" Counsel responded: "[t]hey were, Your Honor." Burnett said nothing of the subject. Nor did anyone, including the trial court, allude to any particular condition necessitating completion. This is of import since trial by consent exists in "exceptional cases where the record **clearly shows** that the parties tried the unpleaded issue." *Hofrock v. Hornsby*, No. 03-14-00505-CV, 2016 Tex. App. LEXIS 5931, at *10 (Tex. App.—Austin June 3, 2016, no pet.) (mem. op.) (emphasis added). It should not be applied in a doubtful situation. *Compass Bank v. MFP Fin. Servs.*, 152 S.W.3d 844, 854 (Tex. App.—Dallas 2005, pet. denied). And the latter is the circumstance at bar.

No one mentioned a particular condition remaining outstanding. Furthermore, our perusal of the record uncovered no debate among the parties regarding any. So, given that the "record [must] clearly show[] that the parties tried the unpleaded issue" and no one at trial alluded to any condition precedent having been unperformed, we cannot say some debate about an unspecified condition precedent was tried by consent. And, by seemingly finding otherwise, the trial court abused its discretion. *See Hofrock*, 2016 Tex. App. LEXIS 5931, at *10 (stating that whether an issue was tried by consent is a decision reviewed under the standard of abused discretion).

**Harm**

Each of the foregoing errors probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1) (stating that no judgment may be reversed unless the error complained of probably caused the rendition of an improper judgment).

This is so because the trial court cited them as the basis for denying Hankins recovery; in other words, the trial court's outcome turned on them.

The Hankins prayed for alternative relief on appeal. They requested us to reverse the trial court's judgment and either "render judgment for Appellants, or alternatively, reverse and remand for further proceedings." Whether the former includes the award of damages as sought at trial or simply specific performance of the contract is unknown. The same is true of attorney's fees. They too were sought below but unmentioned in the appellants' brief and prayer. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(b)(8) (permitting recovery of attorney's fees if the claim is for "an oral or written contract"). Thus, we opt to grant the alternative relief. We reverse the judgment and remand the cause for further proceedings consistent with this opinion.

Brian Quinn
Chief Justice
